I'm not going to do it for you. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. In this case, the Board of Immigration Appeals overturned the IJ's finding that my client was not eligible for convention against torture. The Board, therefore, found that it is more likely than not that Petitioner will face torture upon his return to China. However, the Board upheld the immigration judge's conclusion that Petitioner in this case was a persecutor of others and, therefore, ineligible for asylum. Now, unlike the previous case that the Court just heard, we don't need to go into this sort of fine line drawing, whether this is a barber case or somebody who's shooting someone, because we have a factual finding from the immigration judge which is infirm. And I would like to draw the Court's attention to the immigration judge's finding, which the Board of Immigration Appeals has adopted. It's at the administrative record, page 67. And this is essentially Exhibit A in my argument this morning, where the immigration judge, after hearing extensive testimony, this is approximately a 700-page testimony and exhibit case that the IJ was dealing with, the immigration judge said, and I quote, This Court concludes that this respondent was a supervisor in the technical investigations branch of detectives who were involved or may have been involved in investigations against political dissidents. I consider that to be an explosive and fairly revolutionary injection of a new ingredient into the persecution of others standard. As the Court knows, in order to be disqualified for asylum as a persecutor of others, one must have ordered, incited, assisted, or otherwise participated in the persecution of others. What we have here is an immigration judge saying, look, you might have been involved in these investigations. And I think that is on page 67, Your Honor. Okay. It's at the bottom half of the page. I will note that the Court does, at other places on this exact page, state that in the Court's opinion, Judge Simpson says that respondent did assist in the persecution of others. However, the specific conclusion of the Court is that Petitioner was involved or may have been involved. Is there evidence that would support his having actually participated? I would submit that under a substantial evidence test, one could reach conclusions either way. I would respectfully urge, however, that that we don't need to go to substantial evidence. This is an extensive record. There were interpreter problems. At one point, the court-certified interpreter wrote a letter to the judge saying that she'd made a mistake. This was an extremely convoluted and complex factual record. Now, all we know, Your Honor, I'm sorry. But all I need to know is whether the I.J. made such a finding and whether it was supported in the record. The I.J.'s finding was supported in the record. The I.J.'s finding that Petitioner was involved or may have been involved in persecuting of others was supported by the record. And we do not intend to disturb the factual findings of the I.J. We're simply saying that this involved or may have been involved standard is impermissible. If, as I understand it, there is a dispute, there isn't a dispute that he worked for an internal security entity. That's correct. And that he worked, on his version, he worked with files and had, after the fact, I mean, that's my understanding of his version of events. That's correct, although one of the difficulties with a factual record in this case is that there was a paralegal organization involved in preparing the first declaration, there was another declaration, and finally a third declaration. And we simply don't know what the I.J. made of that factual record. All we know is in his, it's a very parsimonious decision in terms of fact-finding, but what we do know is the I.J. concluding that he was involved or may have been involved. So I think that's the problem. Well, I was going to go further. This is why I was asking you this. What he said was he was they were involved or may have been involved in investigations against political dissidents. But whether or not he was involved in investigations against political dissidents, we know that he was involved on his own testimony. With the files of the interrogations that were going on. So what the I.J. may have been saying or seems to have been saying was even taking his evidence, his own evidence, his own version of what he said, the question is whether that would constitute persecution, which would preclude him from getting asylum. Well, I think it's very clear what the I.J. is saying. And that's in the administrative record, the portion that I'm pointing out, where the I.J. makes a finding that he was involved or might have been involved. Again. Wait. Wait. Now, let me just focus a second on that. You repeatedly say that the I.J. found that your client may have been involved. Was involved or may have been involved, yes. Now, in fact, he said he was supervising people who may have been involved or who were involved. Yes. Now, so that the picture is that when he is, when the ALJ is talking about involvement, he's talking about the people under your client's supervision. That would be correct. And he, and the finding is that collectively they were engaged or individually they may have been engaged. You see what I mean? It isn't quite as if the I.J. is saying your client may have been involved. It's his underlings. I see the court's, I see the distinction. However, it doesn't get us away from collectively they may have been involved. Well, but he makes the finding it is the opinion of this court that the respondent assisted in and at the very least and possibly even ordered persecution of persons. That's correct, Your Honor. Now, that is a direct finding as to the participation of your client. The other language is discussing the activities of the underlings. Do you see it isn't quite as if they're contradictory? That's the only thing I'm focused on for the moment. I do see that point. However, first of all, I note this is all one long sentence come together. Yes, it is. But the second portion of the sentence, which the court has just brought to my attention, which is just addressed, it is the opinion of this court. In other words, that second half of the sentence doesn't have the may have been involved language. And that's certainly how the BIA understood it, because the BIA said that the I.J. decided that the respondent as an official in the Shanghai Public Security Bureau was involved at least indirectly in the activities of the police force. Political distance, meaning he may not have been doing it, but he was supervising people who did. Absolutely. However, it's crucial to see that that opinion is premised on the first part of the paragraph, which is the involved or may have been involved. May have been involved. They can't be separated. The opinion of the court that he assisted is premised on him being involved in supervising people who may have persecuted others. And I will probably need to take reserve the rest of my time. Thank you very much. Ms. Schwartz. Thank you, Your Honors. I'm going to ask Ms. Schwartz to respond to John Ashcroft. I hope you like this brief better because I wrote it. It was better. Thank you. No, it was. The other one was just not there. There was nothing there. I really don't understand counsel's arguments, because on the same page where he says he may have been involved, he continues on to say that he – it is the opinion of this court that the respondent assisted in at the very least and possibly even ordered persecution. But at the top of the page, he makes that statement again, and that is the statement the Board refers to. This court is of the opinion that the respondent held a position with the Shanghai Public Security Bureau, which was somewhat more significant than he is willing to admit, and that he was, at least indirectly, involved in activities of the police force aimed at the control of political dissidents. That is an unqualified declarative statement, and that is what the Board referred to in using those terms, that he was involved at least indirectly. That is the sentence that the Board upheld. That is the finding that the Board upheld. That is hardly parsimonious. Three times, at least. Only because I'm curious with regard to the other case. Suppose he had done only what he said he did, i.e., work on the files. And, again, a necessary function with regard to the interrogation process, but he wasn't himself either interrogating or supervising interrogators. Would he then have been responsible under the statute? What did the I.J. find about that? Did he find that that wouldn't have been enough? Well, he didn't just find about the files, but it depends on what role he had in preparing the files and what purpose the files were used for. What he testified to and what the record shows in the translation is undisputed before this Court, that he personally conducted surveillance of political dissidents. That's in his statement, and he also says it in the record. I have the record here. He personally surveilled political dissidents. That is purely on account of their political opinion. He turned over the results of his surveillance. And this is where he – this is the statement he retracts from in his testimony to others to arrest and torture these people. There is no doubt that this is assisted in persecution of others. That is a clear reading of the statute by the immigration judge, and that decision was specifically upheld by the Board. And I can refer you to page 354, Skilled Investigator at the Public Security Bureau. He just – the dispute there is whether it was public security or public safety. He did a lot of technical things which need to have high skill, special skill to do it. For instance, like investigating telephone conversation, wiretapping, and other things, other electronic surveillance. This was not conducted in a vacuum. The results of the surveillance was turned over, whether it was the files or the results of the surveillance to other people who would arrest and torture these dissidents that he surveilled solely on account of their political opinion and their opposition to the regime. This was heightened when foreign visitors came, and they rounded up lots of people he had surveilled. Whether he personally arrested them or not does not matter in this interpretation of the statute. And this is a valid interpretation which the Board upheld. Do we know for sure that in the Federinko case, the court was interpreting the same statute that we are concerned with? It wasn't. For one thing, again – It had – so the language in this statute saying assists or participates in, the words participates in was absent from the statute that the Supreme Court was considering. Is that right? Well, specifically in the statute, this specific statutory disqualification is in a different section. It is not in the – what was considered in Federinko. And specifically, it says otherwise participated. So that leaves a lot of latitude. But the otherwise participated language is not in the statute that was before the Supreme Court. Okay. And what this – Congress, by giving the Attorney General this leeway, giving a general term such as otherwise participated, indicates that this country is not to be a safe haven to person and grant asylum on basis of fear and persecution to individuals who have persecuted others. And it's a national policy. And this person clearly assisted and otherwise participated in the persecution of others. He has been granted protection under the Convention Against Torture, but again, that grant was premised on the fact that he had knowledge, he had a supervisory position, he – to do with public safety, that would make him a threat to China if he went back, because they felt that he would be in prison for taking away national secrets and would be tortured in prison. So there is no flaw in this decision. It is the board decision, and it is a clear finding. It is based on the regulation and the statute. And again, remember, the regulation – the burden of proof – he has a double burden of proof. It's not only to prove that he is eligible for asylum, but whatever he did by – he hasn't overcome the evidence that he assisted or otherwise participated in persecution. He has a dual burden here, which is set up when there is evidence to indicate that he engaged in such activity. And he has not met the second – either the first or the second burden of proof to show – to overcome the evidence that he did conduct these activities. Therefore, the immigration judge was correct, and the board was correct in upholding him, and the agency was engaging in the statutory interpretation it is authorized to do. And I do submit that Aguirre and Chevron deference are definitely applicable in this case. Are there any questions, Your Honors? No. Thank you. Then the government submits. Very briefly, Your Honors. I readily admit that the I.J.'s decision is self-contradictory. However, I cannot get around the fact that he does make a finding about involved or may have been involved, and that the Board of Immigration Appeals never disavowed that finding. And I think this is absolutely critical. We don't know what the Board of Immigration's rationale was. We don't know whether the board actually – No, we actually do know. We know that the board read the decision, the I.J.'s decision, as having decided that he was involved, at least indirectly, in persecution. And you can dispute that interpretation, but we do know what the BIA thought about it. We do know that the board reached that conclusion. The board also – About what the I.J.'s said. I'm sorry? Regarding what the I.J.'s said. Right. What we don't know is whether – now, the board does state that its conclusions coincide with those of the immigration judge. It says that at the end of its affirmance line. Now, is – that appears to me that the board is saying we – our conclusion concurs with the I.J.'s conclusion that the factual finding that we were involved or may have been involved. And I submit that that is the crux of this case. The board should have disavowed that if it wished to do so. The fact that it does not means that we now have potentially an assisted or might have assisted persecution of others. And I'll submit, Your Honors, my time is up. Thank you. Thank you very much. We thank counsel. The case of Tan v. Ashcroft is submitted. And we will go on to Farouk v. Ashcroft. Thank you. Thank you.
judges: B. Fletcher, Leavy, Berzon